Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Keith R. Murphy
Marc Skapof
Elizabeth A. Scully

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

Hearing Date: October 4, 2011 at 10:00 a.m.
Objection Deadline: September 27, 2011

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br>v.<br><br>MOUNT CAPITAL FUND LTD., MOUNT CAPITAL ASSET SUBSIDIARY LTD., MOUNT CAPITAL LIMITED, and DEXIA BANQUE INTERNATIONALE À LUXEMBOURG, S.A.<br><br>Defendants. | Adv. Pro. No. 10-05123 (BRL) |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT
AGREEMENT BY AND AMONG THE TRUSTEE, MOUNT CAPITAL
FUND LTD. AND MOUNT CAPITAL ASSET SUBSIDIARY LTD.**

TO: THE HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in the settlement agreement (the "Agreement")[1] by and among the Trustee on the one hand, and Mount Capital Fund, Ltd. ("Mount Capital Fund"), and Mount Capital Asset Subsidiary Limited ("Mount Capital Subsidiary," collectively with Mount Capital Fund, the "Mount Capital Companies"), on the other hand, in support thereof, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

The Trustee's settlement with the Mount Capital Companies, results in a $43.5 million cash settlement payment (the "Settlement Payment") and represents a return of 95% of the Mount Capital Companies' total withdrawals from BLMIS.

---

[1] The form of Agreement is attached hereto as Exhibit "A."

This Settlement represents a good faith, complete, and total settlement between the Trustee and the Mount Capital Companies as to any and all disputes between them raised in the Adversary Proceeding and the direct customer claims submitted on account of BLMIS Account 1FR085, including, but not limited to, claims the Trustee had against the Mount Capital Companies for avoidable direct transfers by BLMIS during the 90 day, two year, and six year periods prior to the Filing Date. The Settlement will greatly benefit the victims of the Madoff Ponzi scheme, and the Trustee respectfully requests that the Court approve it.

## BACKGROUND

1. On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). The complaint alleged that the Debtors engaged in fraud through investment advisor activities of BLMIS.

2. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

3. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

---

[2] In this case, the Filing Date is the date on which the Securities and Exchange Commission commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm. *See* Section 78*lll*(7)(B) of SIPA.

|       |                                                                                                       |
|-------|-------------------------------------------------------------------------------------------------------|
| (i)   | removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA; |
| (ii)  | appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and |
| (iii) | removed the case to this Court pursuant to section 78eee(b)(4) of SIPA. |

4. At a plea hearing on March 12, 2009 (the "Plea Hearing") in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York, Madoff pled guilty to an 11-count criminal information, which counts included securities fraud, money laundering, theft and embezzlement. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Plea Hr'g Tr. at 23:14-17.) On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

5. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

6. Pursuant to Orders entered on September 24, 2009, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands (the "BVI Court"): (i) permitted the commencement of the winding up of the Mount Capital Companies, pursuant to the British Virgin Islands Insolvency Act 2003; and (ii) appointed John J. Greenwood and Hadley J. Chilton of Baker Tilly (BVI) Limited, as the official Liquidators of the Mount Capital Companies.

## THE CLAIMS AGAINST THE MOUNT CAPITAL COMPANIES

7. On December 2, 2010, the Trustee filed an adversary proceeding against the Mount Capital Companies, as well as two other defendants who are not parties to the

Agreement.[3] In that action, the Trustee sought a total of $46 million in direct transfers made from BLMIS to the Mount Capital Companies during the lifetime of their relationship.

8. The Mount Capital Companies are currently in liquidation in the British Virgin Islands. Mount Capital Fund opened an account with BLMIS on or about December 11, 2001. That account was assigned BLMIS account number 1FR081. On or about May 1, 2002, BLMIS account number 1FR085 was opened in the name of Mount Capital Subsidiary. On or about May 3, 2001, Mount Capital Fund directed that all the funds and assets that were held in account 1FR081 be transferred into the new 1FR085 account, and that 1FR081 account be closed. Within the six-year period prior to the Filing Date, the Mount Capital Companies received $46 million in transfers from BLMIS, $36 million of which was withdrawn in the 90-day period prior to the Filing Date.

9. The Trustee's claims against the Mount Capital Companies, include, but are not limited to, claims under Sections 544(b), 547, 548, 550 and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and Sections 270 to 281 of the New York Debtor and Creditor Law for initial transfers (the "Transfers") within the applicable statutory period (collectively, the "Avoiding Power Claims").

10. The Mount Capital Companies have disputed any liability to the BLMIS estate under all counts alleged in the Complaint.

---

[3] The defendants in the action that are not a part of this settlement are Mount Capital Limited ("Mount Capital") and Dexia Banque Internationale à Luxembourg, S.A. ("Dexia"). The Trustee's claims in this action against Mount Capital and Dexia are limited to subsequent transferee claims based on the initial transferee avoidance claims the Trustee has asserted against the Mount Capital Companies. In accordance with the terms of the Settlement Agreement, the Trustee intends to dismiss the claims he has asserted in this action against the Mount Capital Companies, as well as Dexia and Mount Capital within five business days after the Closing.

## THE CLAIMS AGAINST THE BLMIS ESTATE

11. Prior to July 2, 2009, the bar date for filing claims, the Mount Capital Fund filed two customer claims on behalf of the Mount Capital Companies with the Trustee; assigned claim numbers 4105 and 15300 (the "Customer Claim"); and asserting losses based on account number 1FR085 in the aggregate amount of $401,948,628.91 as reflected on Mount Capital Subsidiary's BLMIS account statement as of November 30, 2008. A copy of the claims are attached as Exhibit "B."[4]

12. The Trustee has disputed that the Mount Capital Companies are entitled to allowance of a customer claim in the amount reflected on Mount Capital Subsidiary's BLMIS account statement as of November 30, 2008. According to the Trustee, the aggregate amount of Mount Capital Companies' claims, based upon the net equity method of calculating claims is Two Hundred Fifty-One Million, Three Hundred Sixty-Thousand, Five Hundred Forty-Seven Dollars and Eighty-Two Cents ($251,360,547.82) (the "Mount Capital Net Equity Claim"). On March 1, 2010, this Court issued an opinion applying the Trustee's "Net Equity" calculation of customer claims as the difference between amounts deposited into BLMIS and amounts withdrawn (the "Net Equity Method"). The order entered on March 8, 2010, was appealed directly to the Untied States Court of Appeals for the Second Circuit. On August 16, 2011, the Second Circuit affirmed this Court's decision concerning use of the Net Equity Method. *In re Bernard L. Madoff Inv. Secs. LLC*, __ F.3d __, 2011 WL 3568936 (2d Cir. August 16, 2011).

---

[4] Due to the voluminous nature of the schedules and annexures to Mount Capital Fund's customer claim number 4105, those documents are not being filed herewith and are not included within Exhibit "B."

## SETTLEMENT DISCUSSIONS AND TRUSTEE'S INVESTIGATION

13. Since 2009, the Mount Capital Companies, through their respective counsel, engaged in good faith discussions with the Trustee aimed at resolving the Trustee's claims and the amount, if any, of the Mount Capital Companies' customer claims

14. During the long period of negotiations, the Trustee has conducted a comprehensive investigation of the Mount Capital Companies' investments with BLMIS. Although the Mount Capital Companies contested the Trustee's authority to enforce a 2004 Subpoena outside the United States, the Mount Capital Companies agreed to produce certain information on a voluntary basis to the Trustee in connection with settlement discussions, including production of the Liquidators' reports to the Mount Capital Companies creditors' committee, and minutes from meetings the Liquidators have held with creditors and investors. In addition, the Trustee has conducted his own investigation from third-party sources with reference to the Mount Capital Companies' investments with BLMIS. The Trustee's investigation includes, but is not limited to: the review and analysis of the transactional histories of the Mount Capital Companies as reflected in the BLMIS account statements, correspondence and other records and documents available to the Trustee; meetings with counsel for the Mount Capital Companies; and a substantial review of records, documents, and analyses provided by the Mount Capital Companies and third parties.

15. After a review of the relevant records and a thorough and deliberate consideration of the uncertainty and risks inherent in all litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to reach a business resolution in this matter rather than proceed to litigation.

## OVERVIEW OF THE AGREEMENT

16. The principal terms and conditions of the Agreement are generally as follows (as stated above, the form of Agreement is attached as Exhibit "A" and should be reviewed for a complete account of its terms):[5]

- The Mount Capital Companies shall pay to the Trustee for the benefit of the Fund of Customer Property $43.5 million in cash.

- Upon the occurrence of the Closing, Mount Capital Subsidiary shall have an allowed customer claim in the SIPA Proceeding in the amount of $294,860,547.82 and shall be entitled to the full benefit of SIPC customer advances under SIPA § 78fff-3(a). This amount is comprised of the Mount Capital Net Equity Claim of $251,360,547.82, plus an increase of $43.5 million under Section 502(h) of the Bankruptcy Code.

- The Trustee will release, acquit, and absolutely discharge the Mount Capital Companies on the specific terms set forth therein.

- The Mount Capital Companies will release, acquit, and absolutely discharge the Trustee and all his agents and BLMIS and its consolidated estate on the specific terms set forth in the Agreement.

## RELIEF REQUESTED

17. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached hereto as Exhibit "C" approving the

---

[5] Terms not otherwise defined in this section shall have the meaning ascribed in the Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the Agreement, the Agreement shall prevail.

Agreement.

## LEGAL BASIS

18. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Index. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

19. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

20. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

    (i)    the probability of success in the litigation;

(ii) the difficulties associated with collection;

(iii) the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(iv) the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

21. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505. The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

22. The Trustee believes that the terms of the Agreement fall well above the lowest point in the range of reasonableness. The Agreement resolves all claims among the Parties and avoids the cost and delay of what could otherwise be lengthy and contentious litigation. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit"). A true and accurate copy of the Picard Affidavit is attached hereto as Exhibit "D").

23. The Agreement greatly furthers the interests of the customers of BLMIS by adding up to more than $43.5 million to the Fund of Customer Property, and results in the Trustee recovering 95% of the withdrawals made by the Mount Capital Companies from BLMIS without the delay, expense and uncertainty of recovery through litigation.

## CONCLUSION

24. In sum, the Trustee submits that the Agreement should be approved: (a) to avoid lengthy, burdensome, and expensive litigation; and, (b) because it represents a fair and reasonable compromise of the Avoiding Power Claims that greatly benefits the estate and the customers of BLMIS. Since the Agreement is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## NOTICE

25. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Nixon Peabody LLP, 437 Madison Avenue, New York, New York 10022, attn: Jonathan Sablone; (vi) Clifford Chance US LLP, 31 West 52nd Street, New York, New York 10019, attn: Jeff E. Butler; and (vii) Dechert LLP, 1095 Sixth Avenue, Avenue of the Americas, New York, New York 10036-6797, attn: Gary Mennitt. The Trustee has also provided notice to all parties who have entered an appearance through the ECF Filing System and to all interested parties by e-mail or regular U.S. Mail.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "C" granting the relief requested in the Motion.

Dated: New York, New York
August 31, 2011

Of Counsel:

Thomas L. Long
Baker & Hostetler LLP
65 East State Street
Columbus, Ohio 43215
Telephone: (614) 462-2626
Facsimile: (614) 462-2616

Respectfully submitted,

/s/ David J. Sheehan
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Marc Skapof
Email: mskapof@bakerlaw.com

– and –

Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 861-1500
Facsimile: (202) 861-1783
Elizabeth A. Scully (*pro hac*)
Email: escully@bakerlaw.com

*Attorneys for Irving H. Picard,*
*Trustee for the SIPA Liquidation of Bernard L.*
*Madoff Investment Securities LLC*